·RALPH LIPSEY

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed April 18, 1907—Rehearing denied June 5, 1907.*

1. CRIMINAL LAW—*proof that accused knew property was stolen may be circumstantial.* In a prosecution for receiving stolen property, the fact that the accused knew the same had been stolen may be proved by circumstantial evidence, since even the body of a crime may be so proved.

2. SAME—*what evidence sustains conviction for receiving stolen property.* Proof that the accused, who was president of a corporation dealing in second-hand goods, arranged by telephone for the ·sale of new goods, which were afterwards brought to his place of business and sent from there to the customer; that the bill therefor was rendered by the accused through the corporation and paid by the customer; that the person who stole the goods was at the accused's place of business when the goods were brought there; that the accused denied that he received them from such person and claimed he received them from another whose address he would not give, and that no entry of the transaction was made on the books, tends to show that he received the property knowing it was stolen.

3. SAME—*party must obtain ruling on improper remarks.* The accused cannot complain, upon appeal, of improper remarks of the prosecuting attorney unless he has objected and obtained a ruling, or the court has refused to rule and the party excepts to the action of the court.

4. SAME—*what does not preserve the question for review.* Remarks by counsel for the accused during a colloquy with the State's attorney, such as, "I ask your honor to rule; I object to Mr. State's· attorney's statement;" "I ask your honor to rule whether this statement of counsel is proper;" "I take exception, just the same, to the remark;"—do not preserve the question of the propriety of the State's attorney's statements for review where the court did not make any ruling nor refuse to do so.

5. SAME—*what remark does not call attention of jury to the fact that accused did not testify.* The remark by the assistant State's attorney to the jury, after summing up the facts in evidence in a prosecution for receiving stolen property, "What does he say? What explanation does he make?" does not call the attention of the jury to the fact that the accused did not testify in his own behalf, where it is apparent from the remainder of his statement that he referred to the statements of the accused in the presence of the officers when charged with the offense.

6. SAME—*refusal of accused to testify does not preclude comment on the evidence.* The fact that one accused of crime does not testify does not preclude the State's attorney from commenting upon the evidence and pointing out to the jury the legitimate conclusions to be drawn therefrom.

7. EVIDENCE—*what evidence is competent in a prosecution for receiving stolen property.* In a prosecution for receiving stolen property, testimony by the boy who delivered the goods from the possession of the true owner, that he was told by a third party to telephone for a drayman and send the goods to the accused, and that after they were delivered such third party paid him a certain sum as his share, is properly admitted, as tending to characterize the transaction and as tending to establish the larceny of the goods.

8. SAME—*a former transaction may be proven to show guilty knowledge.* In a prosecution for receiving stolen property, proof that the accused on a former occasion received some of the same goods through the same channel is competent as tending to show guilty knowledge.

9. SAME—*force of verbal admissions of accused.* Verbal admissions of the accused, if deliberately made and fully proven, are satisfactory evidence, otherwise they are to be received with great caution.

10. INSTRUCTIONS—*when instruction does not comment on weight of evidence.* An instruction informing the jury that the testimony of one credible witness, if uncontradicted and believed by the jury, is sufficient proof of the facts to which he testified, for the purposes of the trial, is not misleading, as commenting upon the weight of the evidence.

11. TRIAL—*order of calling witnesses rests in discretion of the court.* Where the State's attorney, in his opening statement, states that he will call a certain party as a witness but decides not to call him in chief, it is within the discretion of the trial court to allow the witness to be called after the motion for a peremptory instruction has been disposed of.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. M. W. PINCKNEY, Judge, presiding.

JOSEPH B. DAVID, and EDWARD SONNENSCHEIN, for plaintiff in error.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (JAMES J. BARBOUR, of counsel,) for the People.

Mr. JUSTICE HAND delivered the opinion of the court:

The grand jury, on the 24th day of January, 1906, returned into the criminal court of Cook county an indictment charging Ralph Lipsey, the plaintiff in error, with the offense of buying, receiving and aiding in concealing stolen property, knowing the same to be stolen, in manner following, that is to say: "One Ralph Lipsey, late of, etc., on the second day of September, 1905, in the county of Cook, etc., fcloniously, unlawfully and unjustly, for his own gain and to prevent the owner from again possessing its property, did buy, receive and aid in concealing two thousand light sockets, of the value of sixteen and one-half cents each, of the goods and chattels of the Electric Appliance Company, the same being a corporation,·etc., then lately before feloniously stolen and carried away from the said Electric Appliance Company, the same being a corporation organized as aforesaid, by a certain evil disposed person or persons, the said Ralph Lipsey then and there well knowing the said goods to have been feloniously stolen, taken and carried away, contrary to the statute," etc. A trial was had at the February term of said court, which resulted in the conviction of the plaintiff in error and his sentence to the penitentiary, and he has sued out a writ of error from this court to reverse said judgment of conviction.

It is first contended the evidence was not sufficient upon which to convict the plaintiff in error of the crime with which he was charged.

It appears from the evidence that the Electric Appliance Company in the fall of 1905 was located at the corner of Jackson boulevard and DesPlaines street, in the city of Chicago, and was dealing in electric supplies; that in the month of October it purchased nineteen thousand Bryant & Perkins electric light sockets from the Perkins Electric Switch Manufacturing Company, which were packed in boxes, of five hundred in a box; that the boxes were numbered and were marked with the letters "E. A. Co." at the time they

were delivered to the Electric Appliance Company; that prior to the month of October said Electric Appliance Company had in its employ one Arthur Dietrichstein; that during the months of October and November, and after the said Dietrichstein had left the employ of the Electric Appliance Company, Dietrichstein caused a boy in the employ of the Electric Appliance Company by the name of Leonard Graham to deliver to a drayman who did hauling for the Electric Appliance Company, at one time one box of electric light sockets and at another time four boxes of electric light sockets, with instructions to direct the drayman to deliver said boxes to the Great Northern Metal Company, whose place of business was located at 61 West VanBuren street, in the city of Chicago, of which company the plaintiff in error was president; that each delivery was accompanied by a letter from Arthur Dietrichstein to the Great Northern Metal Company; that at the time the first box was taken to the business place of the Great Northern Metal Company the plaintiff in error was present and received the box and letter from the drayman; that at the time the four boxes were taken to the business place of the Great Northern Metal Company the plaintiff in error was not present, and a man who was standing in the door of the business place of the Great Northern Metal Company with Arthur Dietrichstein directed the drayman not to unload the boxes at that place and to take them to the business place of the Guarantee Electric Company, on Adams street, in the city of Chicago, where they were delivered by the drayman; that a day or two before the twenty-second of October, 1905, which was the day upon which the four boxes of electric light sockets were delivered to the drayman by Graham, Mr. Frank, who was the manager of the Guarantee Electric Company, called up the Great Northern Metal Company and asked the plaintiff in error if he had any more sockets, and stated that he was running short and needed more, and he also testified the plaintiff in error replied he would let

him know later whether he had any more he could get for him; that on the second of November he was working in the basement of the place of business of the Guarantee Electric Company, and when he came up-stairs there were four boxes of electric light sockets on the floor and a bill on his desk for two thousand sockets, covering the four boxes which were delivered that day; that the bill was paid the next day to the plaintiff in error, who receipted the same as the president of the Great Northern Metal Company; that two of the boxes of electric light sockets so received from the Great Northern Metal Company were sold by the Guarantee Electric Company, and that the two remaining boxes were delivered by the Guarantee Electric Company to the Electric Appliance Company, and were identified by Frank as the two boxes of electric light sockets then in the court room; that one box had on it "No. 12,806, Perkins, Chicago, E. A. Co. 9386, 500," and the other, "No. 12,781, Perkins, Chicago, E. A. Co. 9386, 500," and said boxes were identified as boxes containing electric light sockets which were a part of the nineteen thousand invoice of electric light sockets received by the Electric Appliance Company from the Perkins Electric Switch Manufacturing Company in October, 1905. Arthur Dietrichstein paid to Leonard Graham $11 for his share of the proceeds of the four boxes the day after they were delivered to the drayman.

The evidence leaves no doubt in the unbiased mind but the five boxes of electric light sockets abstracted from the business place of the Electric Appliance Company were stolen by Arthur Dietrichstein and delivered, through Graham and the drayman, to the Great Northern Metal Company, of which the plaintiff in error was president. The first box was delivered to the plaintiff in error in person, and four boxes were delivered to the Guarantee Electric Company upon the order of a person at the business place of the Great Northern Metal Company, in pursuance of an arrangement made before that time by the plaintiff in error

with Mr. Frank, of the Guarantee Electric Company, and
a bill was rendered by the Great Northern Metal Company
to the Guarantee Electric Company therefor, and the plain-
tiff in error received the price thereof and receipted the bill
therefor to the Guarantee Electric Company. In view of
the foregoing facts the question arises, did the plaintiff in
error have knowledge that said electric light sockets were
stolen at the time they were delivered to him or to his cor-
poration, and did he receive them with the felonious intent
of preventing the owner from again possessing itself of its
property and for his own gain?

Arthur Dietrichstein, who stole the four boxes of elec-
tric light sockets, was at the business place of the Great
Northern Metal Company when the boxes arrived at that
place in charge of the drayman, and was seen in company
with the man at that place who ordered the goods to be
delivered to the Guarantee Electric Company. The Great
Northern Metal Company was a second-hand dealer. The
electric light sockets in question were new and in the original
and unbroken packages. The retail price of new electric
light sockets similar in kind to those delivered by the Great
Northern Metal Company to the Guarantee Electric Com-
pany were worth at retail, by the box of five hundred, six-
teen and one-half cents each. The four boxes, of five hundred
electric light sockets each, delivered by the Great Northern
Metal Company to the Guarantee Electric Company were
sold to the Guarantee Electric Company for ten and one-half
cents each. The attorney for the Electric Appliance Com-
pany and two police officers called upon the plaintiff in error
at the place of business of the Great Northern Metal Com-
pany and inquired whether he had sold the Guarantee Elec-
tric Company electric light sockets. He said he had, and
when inquired of by them as to where he bought them, he
said he had purchased them of a man by the name of Ham-
ilton, who lived in St. Louis, Mo. He afterwards claimed
he had purchased them in part from a Chicago dealer by
227—24

the name of Meyer, but denied he had purchased any electric light sockets from Arthur Dietrichstein. The evidence showed, without contradiction, that the Great Northern Metal Company obtained through Arthur Dietrichstein the two thousand sockets which it delivered to the Guarantee Electric Company on November 2. Hamilton was not known to the trade, and the plaintiff in error could not or would not give the name of the firm he represented in St. Louis or his post-office address, and Meyer testified he never sold the plaintiff in error or his corporation any electric light sockets. It is quite evident that the delivery of the four boxes of electric light sockets stolen by Arthur Dietrichstein on the second day of November was caused to be made to the Guarantee Electric Company with the intent to prevent the Electric Appliance Company from again possessing itself of said boxes of electric light sockets, and it had the effect to deprive said Electric Appliance Company of the permanent possession of two of said boxes, and while the money received for the four boxes was receipted for by the plaintiff in error in the name of the Great Northern Electric Company, by himself as president, he was the president of said company and presumably a stockholder therein, and thus received for his own gain the price, or a part thereof, which was paid to him for said four boxes of electric light sockets by the Guarantee Electric Company. The plaintiff in error introduced no evidence, other than character evidence, to meet the case made by the People against him.

In *Langford* v. *People*, 134 Ill. 444, the defendant was convicted of breaking into a freight car and stealing certain meat from a crate which he found in the car, and it was contended the evidence was not sufficient to establish his guilt. The court, on page 448, said: "In addition to finding the meat in the possession of the defendant, grease was found on the sides of the cellar door, where it had been taken down the cellar, and the legs of a pair of pants, rec-

ognized as belonging to the defendant, were found to be saturated with grease. The evidence identifying the meat found in the possession of the defendant as the same meat stolen from the car was slight. But that was purely a question of fact for the jury, and we are not prepared to say it was insufficient to authorize the verdict. The defendant did not attempt to show that he owned the meat found in his possession or that it came into his possession honestly, as he doubtless could have done if such had been the fact. Under such circumstances, although the evidence identifying the meat found in defendant's possession as the same meat taken from the crate may be slight, we are not inclined to disturb the finding of the jury." And in *Gunther* v. *People,* 139 Ill. 526, the defendant was convicted of receiving a stolen watch, and it was contended the evidence was not sufficient to support the conviction. The court, on page 531, said: "Counsel insist that the evidence fails to show that plaintiff in error received the watch from the one who stole it. But it is not indispensable that such evidence shall be direct. That fact may be proved by circumstances. The presumption against the plaintiff in error by reason of the possession of property recently stolen, not satisfactorily explained, is, that he himself stole the property; but his declaration that he received it from another may be taken as against him, and in support of the indictment, as sufficient evidence that he received it from the thief, rather than that he stole it himself."

In view of all the evidence in this record we are of the opinion the jury properly found the plaintiff in error guilty.

It is next urged that the case should be reversed by reason of the misconduct of the State's attorney in demanding of the plaintiff in error that he produce the letter sent by Arthur Dietrichstein, by the hand of the drayman, to the Great Northern Metal Company with the first box of electric light sockets, and which the drayman testified he delivered to plaintiff in error. The record upon that subject

shows that Henry Ryan, the drayman who delivered the first box of electric light sockets, testified: .

"I got that box from the Electric Appliance Company, from Leonard Graham, who was alone. He also gave me a letter,—a sealed envelope addressed to the Great Northern Metal Company.

Q. "What did you do with that letter?

A. "Brought it over to the Great Northern Metal Company with the box.

Q. "And who did you give it to?

A. "Ralph Lipsey, the defendant.

Mr. Barbour: "The State now calls upon the defendant to produce that letter which the witness says he handed to Ralph Lipsey.

Mr. David: "I except to the remark of the State's attorney.

The court: "What is your proposition? What is the point?

Mr. Barbour: "I call on Mr. David to produce......

The court: "No, I ask Mr. David what the point is of the exception.

Mr. David: "I have made my objection. There isn't any point about it. I insist it is error for the State's attorney to make that kind of a statement. I am not called upon to make any reply to it.

Mr. Barbour: "But in the event that Mr. David does not produce it the State will ask the privilege of proving its contents by secondary evidence.

Mr. David: "I except to these remarks and calling upon the defendant to produce anything.

Mr. Barbour: "I am calling on you for the letter.

Mr. David: "We claim there is no letter or that we got anything from anybody.

Mr. Barbour: "Well, if that is the answer to my request to produce, I take his answer, that is all.

Mr. David: "Well, produce your secondary evidence."

When the plaintiff in error was called upon to produce the letter his attorney said, "I except to the remark of the State's attorney;" and again, "I except to these remarks and calling upon the defendant to produce anything." It will be seen the court was not asked by the attorney for the plaintiff in error to rule as to the propriety of the remark of the State's attorney in calling upon the defendant to produce the letter, and when the court inquired of Mr. David the point of his exception, he replied, "There isn't any point about it." The court was therefore not given an opportunity to rule upon the remark of the State's attorney.

The rule in this State is clear and well settled that a party litigant can only complain where he has objected and obtained a ruling and excepted to it, or excepted to the refusal of the court to act. (*North Chicago Street Railroad Co.* v. *Leonard,* 167 Ill. 618; *City of Salem* v. *Webster,* 192 id. 369.) In the *Leonard case,* on page 620, the court said: "It appears from the record that during the argument there was a colloquy between the counsel as to the argument on behalf of the plaintiff, and defendant's counsel said that he objected, and in some cases he excepted to what was said, but no objection was addressed to the court nor was any action or ruling asked for or obtained. Exceptions can only be taken to some ruling or decision or to action or want of action by the court, and cannot be taken to the conduct of attorneys. Instead of objection, controversy and retort between attorneys, the objection should be made to the court, who should see to it that they do not harangue the jury upon improper subjects. It is the duty of the court to regulate the trial and the argument and conduct of attorneys, to preserve the dignity and decorum of the proceedings, to prevent wrangles between attorneys and to compel obedience to rulings and decisions. There being no action or want of action by the court which is excepted to, there is nothing on that subject to be reviewed."

As the court did not act, and was not asked to act by the attorney for the plaintiff in error, the question of the propriety of the action of the State's attorney in demanding the said letter is not presented for review upon this record, and there is nothing in the question for review by this court attempted to be raised by the contention of the attorney for plaintiff in error made by his brief and filed in this court.

It is further contended that the State's attorney, in his argument to the jury, called the attention of the jury to the fact that the plaintiff in error had not taken the stand as a witness in his own behalf. The State's attorney, in his argument, was reviewing the testimony which tended to show that the four boxes of electric light sockets had been stolen by Arthur Dietrichstein and delivered by him to the Great Northern Metal Company and sold by the Great Northern Metal Company to the Guarantee Electric Company, and that the purchase price received therefor had been paid to the plaintiff in error, and in connection therewith he was addressing the jury upon the subject of the interview held between the plaintiff in error and Vose relative to the loss by the Electric Appliance Company of said sockets and the sale thereof by the plaintiff in error to the Guarantee Electric Company. He said: "Now, did this man aid, abet and encourage, not being present? We have the bargain made over the telephone two or three days before for these goods. That traces prior knowledge to him, and his entire actions in charge of that place show that he was the moving spirit, has knowledge of it all; and I say you have the facts before you to show Dietrichstein, the thief, stealing them, Dietrichstein, the thief, bringing them to Lipsey, and Lipsey selling them. And what does Mr. Lipsey say, gentlemen of the jury, to this charge? What does he say? What explanation does he make?" Thereupon the following colloquy took place between the State's attorney, Mr. David, the attorney for the plaintiff in error, and the court:

Mr. David: "Wait a minute. Your honor, I ask your honor to rule. I object to Mr. State's attorney's statement.

Mr. Barbour: "Now, you wait.

Mr. David: "Now, you keep quiet when I am making my objection.

Mr. Barbour: "I know what I am talking about.

Mr. David: "I do not think you do. I ask your honor to rule whether this statement of the counsel is proper.

Mr. Barbour: "Your honor cannot rule until your honor understands what I am saying.

Mr. David: "It is what you have said,—not what you are going to say.

Mr. Barbour: "Now, I am going to give the explanation that he makes.

Mr. David: "No—to this charge. Charge by whom? Charge by whom? I take an exception to the remarks. I ask the court to rule on these remarks of the State's attorney.

Mr. Barbour: "If I am within the evidence I have the right to make the remarks.

Mr. David: "I ask the court to rule on these remarks.

The court: "It is not quite clear to me what you refer to there, Mr. Barbour.

Mr. Barbour: "Why, of course; because, as has happened before, counsel interrupted me. I am asking: 'What does he say? What explanation does he make?' And I am now going to tell the jury what he says and what explanation he makes.

Mr. David: "You said, 'to this charge.'

Mr. Barbour: "To this charge.

Mr. David: "Charges by whom?

Mr. Barbour: "This charge by Mr. Vose, that electric light sockets have been stolen from the Electric Appliance Company and that Lipsey has sold electric light sockets to the Guarantee Electric Company.

Mr. David: "That is what you mean?

Mr. Barbour: "Yes, that is what I mean, and you knew it, too.

Mr. David: "Well, I didn't know it, and I know it is not true. I do not believe it is so and I do not believe you believe it is so.

Mr. Barbour: "What did you think I meant?

Mr. David: "Never mind what I think. I know the tricks of the assistant State's attorneys in trying to violate the law. I take an exception, just the same, to the remark."

It will again be observed that Mr. David said: "I ask your honor to rule. I object to Mr. State's attorney's statement;" again, "I ask your honor to rule whether this statement of the counsel is proper;" again, "I ask the court to rule on these remarks of the State's attorney;" again, "I ask the court to rule on these remarks;" and again, "I take an exception, just the same, to the remark." It is clear that Mr. David did not except to any ruling of the court or to the action of the court in refusing to rule, and that the question sought to be raised as to the impropriety of the remarks of the State's attorney was not, under the rule as heretofore stated, requiring the party objecting to except to the ruling of the court or to his refusal to rule, preserved for review in this court. If, however, the question had been preserved for review in this court, we think the remarks of the State's attorney were harmless and were not made with the intention of calling the attention of the jury to the fact that the plaintiff in error did not testify as a witness in the case; but if they were not harmless and if they were made with an ulterior purpose we think the error was cured by the action of the attorney of the plaintiff in error, as later in the argument he called the attention of the jury to the fact that his client did not testify in his own behalf as a witness during the trial.

In the argument of the case Mr. David had read from the opinion in *Cohn* v. *People,* 197 Ill. 482, and upon the State's attorney attempting to read from the same opinion

Mr. David interrupted him, and stated to the court, in the presence of the jury: "If your honor please, I specifically read that case with reference to instruction to the jury as to what constitutes guilty knowledge, and that does not give him any right to read the whole case by reason of the fact in that case the defendant testified, because it had nothing to do with these instructions. * * * Therefore that does not give him the right to read any part of the case to show to the jury that in that case the defendant testified unless it was by reason of something that I said, and I guarded against it by specifically telling the jury that I read this case on this point only. * * * The Supreme Court specifically says you haven't any right to call attention to any decision or any other case that the defendant did not testify, because that is simply another way of evading the statute."

A party litigant cannot ask that a case be reversed for error of which error he is guilty himself. We think, however, no wrong was done the plaintiff in error by the remarks of the State's attorney above set out. By refusing to testify a defendant cannot prevent the State's attorney from commenting upon the evidence and pointing out to the jury the legitimate conclusions to be drawn therefrom. Mr. Vose and two police officers had gone to the place of business of the Great Northern Metal Company, and in a conversation with the plaintiff in error had stated to him that several thousand electric light sockets had been stolen from the Electric Appliance Company by Arthur Dietrichstein, and that several boxes of these electric light sockets had been delivered to the Great Northern Metal Company and had been sold by the Great Northern Metal Company, and called upon the plaintiff in error for an explanation, and in view of his explanation we think the State's attorney was justified in saying to the jury: "What explanation does he make? What does Mr. Lipsey say, gentlemen of the jury, to this charge?" And think he had a right to say

to the jury: "Why, he says, 'I don't know Arthur Dietrich-stein, and I never got the things from Arthur Dietrichstein;' and he goes on: 'These clean-looking new sockets that I got were second-hand goods that came from St. Louis, from a man named William Hamilton, whose address I don't know, and, I think, the United States Fixture Company, whose address I don't know, and I cannot show you on my books where I made a single purchase.' That is the answer that Ralph Lipsey makes to this charge, gentlemen of the jury. That answer is false, and by his answer to the charge he shall be judged." When the statement of the State's attorney is taken as a whole, it is apparent he was not referring to the fact the plaintiff in error had failed to testify as a witness, but to the answer he made to the charge made against him by Vose in the presence of the police officers.

In *Bradshaw* v. *People,* 153 Ill. 156, the State's attorney said, "The enticing and taking away of the prosecuting witness is not denied by the defendant." The court, on page 162, said: "We do not * * * regard the statement as an indication of misconduct on the part of counsel or an attempt to evade the statute to the prejudice of the defendant. Counsel may properly, for the purposes of argument to the jury, state what facts he understands not to be denied, and the remarks here objected to might fairly have been intended to do nothing more."

In *Watt* v. *People,* 126 Ill. 9, in discussing the question now under consideration, the court, on page 31, said: "Indirect and covert references to the neglect of the defendant to go upon the witness stand may be as prejudicial to his rights as a direct comment upon such neglect. But it does not necessarily follow that every reference to the law on that subject is prohibited. The true test would seem to be, was the reference intended or calculated to direct the attention of the jury to defendant's neglect to avail himself of his legal right to testify? In the present case we may fairly assume that such was not the intention of counsel.

He was engaged in discussing, in apparent good faith, an entirely different proposition, and his incidental reference to the legal right of a defendant to testify in his own behalf was obviously made only by way of illustrating that topic. Nor are we able to see that the remark, in the connection in which it was made, was calculated to direct the attention of the jury to the defendants' neglect to testify. Such neglect was not spoken of, and the reference to their right to testify was in a discussion in which the attention of the jury was being directed to an entirely different topic. But if the allusion to the defendants' legal right to testify was otherwise improper, it is difficult to see how it could have prejudiced the defendants after the statement by their own counsel to the jury that one of them had in fact exercised that right."

The contention is also made that the court erred in permitting the witness Graham to state that Arthur Dietrichstein said to him to telephone for the drayman and send said boxes of electric light sockets to the Great Northern Metal Company, and after they were delivered Dietrichstein paid to him $11, as, it is said, the plaintiff in error was not present at the time the orders were given to Graham by Dietrichstein and the money paid to Graham. What was said by Arthur Dietrichstein to Leonard Graham was not an admission or confession that the goods were stolen, but tended to characterize the transaction, and the payment of the money to Graham by Dietrichstein tended to establish the larceny of the boxes containing the electric light sockets, and we think was entirely proper.

It is also said the court erred in admitting proof of the delivery of the first box of electric light sockets and its receipt, with the letter from Arthur Dietrichstein, by the plaintiff in error. The State's attorney elected to prosecute only for the four boxes of electric light sockets delivered on November 2, and on his motion all the evidence with reference to the first box, and the letter accompanying the

same, was stricken out of the record. This eliminated that evidence from the case. We think, however, such motion was unnecessary, as the evidence was competent to prove guilty knowledge on the part of the plaintiff. *Copperman* v. *People,* 56 N. Y. 591; 2 Bishop on Crim. Proc.—3d ed.—sec. 990, where, under the title "Receiving Stolen Goods," it·is said: "Other receivings may, as evidence of guilty knowledge, be shown against the defendant, within the rules familiar in this class of questions."

Other objections are made to the admission of evidence, but the same are extremely technical and without force.

Twenty instructions were given on behalf of the People and thirty were offered on behalf of the plaintiff in error, twenty-five of which were given. The plaintiff in error has made numerous objections to several instructions given on behalf of the People and complains of the failure of the court to give one instruction offered by him. We have gone through the mass of instructions given and refused in this case and think they state the law of the case correctly when considered as a whole and as a series, and that the jury were properly instructed as to the law of the case.

It is urged by the plaintiff in error the first instruction given on behalf of the People assumes that the electric light sockets were offered to the plaintiff in error and that he received the same. While that instruction is somewhat involved, we do not think it subject to the criticism made upon it.

It is also urged that the People's eighth given instruction was so framed as to mislead the jury. That instruction was upon the subject of circumstantial evidence, and was in substantially the form in which instructions upon that subject are usually given.

It is also urged that the eleventh instruction given on behalf of the People was likely to mislead the jury in this: that it commented upon·the weight of the evidence. It informed the jury that the testimony of one credible witness,

if uncontradicted and the jury believed his testimony, was sufficient proof of the facts to which he testified, for the purposes of the trial. We think the instruction contained a correct statement of the law.

The ninth instruction, defining what constitutes an accessory before the fact, was abstract in form. We do not think, however, it misled the jury.

The People's third instruction informed the jury that the body of the crime might be established by circumstantial evidence. Such has been held to be the law in *Campbell* v. *People*, 159 Ill. 9.

Plaintiff in error's refused instruction was as to the weight to be given to verbal admissions made out of court, and the jury were sought to be instructed thereby that such admissions should be received with great caution,—which is true unless they are deliberately made and fully proven, when such evidence is of a most satisfactory character. (*Marzen* v. *People,* 173 Ill. 43.) The instruction was properly refused for want of such limitation.

The court permitted the State's attorney to call the witness Vose after the State had closed its case and a motion to take the case from the jury had been argued and overruled. The State's attorney, in his opening statement, stated Vose would be called as a witness. Later on he decided not to call him in chief, but after the motion for a peremptory instruction had been disposed of he asked leave of the court to call and examine him as a witness. The plaintiff in error was not surprised by the calling of Vose, as he had been informed by the State's attorney he would be examined as a witness, and it rested in the sound discretion of the trial court to allow him to be called and examined at the time he was called and examined.

Finding no reversible error in this record the judgment of the criminal court of Cook county will be affirmed.

*Judgment affirmed.*