(No. 14962.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RUSSELL WOOD, Plaintiff in Error.

*Opinion filed December 19, 1922—Rehearing denied Feb. 8, 1923.*

1. CRIMINAL LAW—*when all conspirators are guilty of murder.* Where there is a conspiracy to commit a robbery, and a murder results in the attempt to carry out the conspiracy, all the conspirators are guilty of the murder.

2. SAME—*when affidavit for continuance is not sufficient.* An affidavit for a continuance on the ground that the defendant is unable to procure certain witnesses is not sufficient where it does not state where the supposed witnesses may be found or show that the defendant has been diligent in locating them and states no facts from which it may be supposed that they would be present at the next term of court if the continuance were granted.

3. SAME—*when failure to give names of witnesses is not ground for continuance.* Failure to give the defendant the names of witnesses for the State not indorsed on the indictment until the first day of the trial is not ground for a continuance where it required a week to empanel the jury, so that the defendant, who was represented by two attorneys, had that time in which to examine the witnesses before any testimony was taken.

4. SAME—*granting a separate trial rests in discretion of court.* The general rule is that those indicted jointly for the commission of crime are to be tried together, and the matter of granting a separate trial to a co-defendant is within the discretion of the court, subject to review in case of an abuse of such discretion.

5. SAME—*motion should show grounds for a separate trial.* A motion for a separate trial must set out the grounds upon which such separate trial is asked.

6. SAME—*when refusal to grant separate trial is not an abuse of discretion by court.* Refusal to grant a separate trial will not necessitate a reversal where the affidavit merely states that certain co-defendants had made admissions, declarations or confessions implicating the defendant, and where it does not appear what statements were made by a particular co-defendant or that any statement out of the defendant's presence was admitted in evidence except that of one co-defendant, which the court instructed the jury to consider as admitted against the declarant, only.

7. SAME—*when a co-defendant may testify before being sentenced on the plea of guilty.* Where a co-defendant pleads guilty

shortly after the selection of the jury it is not error prejudicial to the other defendants to allow said co-defendant to testify before sentence is pronounced upon him, as it is proper for the court to hear such testimony in order to know what sentence to impose.

8. SAME—*what remark of counsel as to defendant's failure to testify is not prejudicial.* A remark by the State's attorney, addressed to the court during an argument between counsel as to the admissibility of certain evidence, in which he said, "I don't see how any witness except the defendant Wood could testify to that," can not be regarded as a comment on the defendant's failure to testify, where the remark was made before the defendant had finished putting in his case and when it was not apparent that he would not testify.

WRIT OF ERROR to the Circuit Court of Mercer county; the Hon. EMERY C. GRAVES, Judge, presiding.

HARTZELL, CAVANAGH, MARTIN & HARTZELL, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, PAUL J. GRAHAM, State's Attorney, and GEORGE C. DIXON, (EDWARD L. EAGLE, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, Russell Wood, and Quinton Sherman, Thomas E. Pruett and Roy Parker, *alias* Abe Rubenstein, were indicted by the grand jury of Mercer county for the murder of Robert C. Swearingen in the city of Aledo. Pruett pleaded guilty, Rubenstein was not apprehended, and Sherman and plaintiff in error were convicted. The latter brings the case here on writ of error.

Plaintiff in error was first indicted alone on December 10, 1920, and on December 20 filed a motion to quash the indictment, which motion was overruled, and thereupon he entered a plea of not guilty. On January 12, 1921, this indictment was *nolle prossed,* and on January 13 the grand jury was recalled and on that day returned an indictment against plaintiff in error and the co-defendants named. The

plaintiff in error moved for a separate trial, which was denied, and thereafter he moved for a continuance, which motion was also denied. On the first day of the trial, being furnished with a list of the witnesses to be used by the People, he again moved for a continuance, which motion was denied. The rulings of the court on these matters are assigned as error, with the further ground that the court erred in refusing plaintiff in error's instruction No. 4 and in ruling on the admissibility of evidence.

The uncontradicted proof offered on behalf of the State shows that between one and two o'clock in the morning of September 16, 1920, a number of men were gambling in the room of Robert C. Swearingen on the second floor of a two-story building located on College avenue, in the city of Aledo. While the game was in progress Pruett and Rubenstein forced their way into the room and proceeded to hold up and rob the card-players. Swearingen resisted and drew his gun and started shooting. The robbers returned the shots and left the room, firing as they went. Swearingen followed them out and received a wound of which he died a few minutes later. The State's evidence also shows that on the night of September 15 plaintiff in error and Pruett and Rubenstein were driven from Galesburg to Aledo in an automobile operated by Frank F. Bolling and James R. Tomlinson. They arrived in Aledo about one o'clock in the morning. The evidence shows from the testimony of Pruett, who withdrew his plea of not guilty and pleaded guilty and then testified, that he, with plaintiff in error and Rubenstein, planned the trip to Aledo for the purpose of holding up and robbing the players in this particular poker game; that plaintiff in error knew about the game and informed the other two about it; that plaintiff in error approached Bolling and Tomlinson in the city of Galesburg and proposed that they drive him, with two of his friends, to Aledo in order that they might all join in the gambling that was going on there, and that plaintiff in error would pay them

$10 for the trip; that on their arrival at Aledo they met
Sherman, and that by previous understanding with Sher-
man he was to locate the game and plaintiff in error was
to act as watch on the street while Pruett and Rubenstein
held up the players.  Tomlinson and Bolling remained in
the automobile, just a short distance away.  Plaintiff in er-
ror, according to the testimony of some of the State's wit-
nesses, was seen on the street opposite the building where
the hold-up occurred, just before the shooting began.  He
was next seen at 7:30 o'clock that morning at the railway
depot in Aledo.  The evidence shows that Pruett and Ru-
benstein, immediately after the shooting, ran from the scene
and jumped into the automobile of Tomlinson and Bolling
and ordered them to drive into the country as fast as they
could; that after they had driven about seven miles they
ordered the machine stopped and there left it, after warning
Bolling and Tomlinson to tell nothing about the affair.  The
evidence of the State tends to establish that plaintiff in er-
ror, with Pruett, Rubenstein and Sherman, had formed a
conspiracy to hold up this card game, that Sherman was to
locate the game and arrange for the means to get away, and
plaintiff in error was to watch on the street while Pruett
and Rubenstein held up the players.

Plaintiff in error did not take the stand, and on his be-
half evidence was offered tending to show that he was of
unsound mind, but it is not even contended by counsel in
the argument that it was proven that he was insane, as that
term is understood as a defense to a charge of crime.  It
is difficult to see how the jury could have arrived at any
other verdict than the one rendered in this case.  If they
believed, as the evidence tended to show, that there was
a conspiracy to rob these players and that the murder fol-
lowed as a result of and as a part of the conspiracy, then,
under the well settled rules, the conspirators are all guilty
of murder.

Plaintiff in error's first motion for continuance was on the ground that Ray Thompson and his wife, who were by the affidavit alleged to be residents of Aledo, were out of the city and could not be found; that affiant was informed and believed they had gone to California but that they would return, and he was informed and believed that he would be able to have them present at the next term of court. The affidavit also set up that if Thompson and his wife were present they would testify that at the time of the killing of Swearingen plaintiff in error was at their home in Aledo and remained there from one o'clock in the morning until sunrise. The affidavit, however, does not state where the supposed witnesses were, beyond stating on information and belief that they had gone to California, and states no facts from which it would be reasonable to believe the witnesses would be present at the next term of court. These are essential to a valid affidavit for continuance. (*People* v. *Donaldson,* 255 Ill. 19; *Wilhelm* v. *People,* 72 id. 468.) Moreover, there is not a sufficient showing of diligence on the part of the plaintiff in error, as the affidavit sets out only that counsel for the plaintiff in error inquired from persons who plaintiff in error thought might know as to the whereabouts of these witnesses. We are of the opinion that the court did not err in denying the motion for a continuance. It might be added that plaintiff in error could scarcely be held to have been harmed by the ruling of the court in denying the motion for continuance, for the reason that the record shows that during the trial of the case, after the closing of testimony, plaintiff in error's counsel were informed that Thompson and his wife were in Aledo and could be produced as witnesses if desired, and the State offered to re-open the case and permit the use of these witnesses by plaintiff in error, but the latter's counsel declined so to do. We are at a loss to understand how plaintiff in error can argue prejudice in this matter. There was no other testimony offered on the matter of alibi. If these witnesses

would testify as set out in the affidavit of plaintiff in error, they were very important witnesses and the only witnesses on the question of alibi. Plaintiff in error was given an opportunity to use them, and cannot be held to be prejudiced by the refusal of the court to grant a continuance on the ground of their supposed absence.

Plaintiff in error's second motion for continuance was made by reason of the fact that the State's attorney did not present the names of witnesses other than those which were indorsed on the indictment, until the first day. of the trial, at which time plaintiff in error was served with a list of forty-two names. The record shows that it required one week to empanel the jury to try the cause before the commencement of the hearing of testimony. Defendant had two attorneys representing him in the case. It was not error to deny the motion for continuance on the ground of want of opportunity to examine the witnesses whose names were tendered.

Plaintiff in error also contends that he was entitled to a separate trial because of certain confessions having been made by some of his co-defendants implicating him in the commission of the crime. The matter of granting a separate trial is within the discretion of the court and may not be assigned as error in the absence of an abuse of such discretion. (*People* v. *Sobzcak,* 286 Ill. 157; *People* v. *Covitz,* 262 id. 514; *People* v. *Gukowski,* 250 id. 231.) The general rule is that those indicted jointly for the commission of crime are to be tried together. (*Doyle* v. *People,* 147 Ill. 394.) A motion for separate trial must set out the grounds upon which such separate trial is asked. (*People* v. *Paisley,* 299 Ill. 576.) In this case the affidavit set out as a ground for separate trial that two of plaintiff in error's co-defendants, Pruett and Sherman, "did admit and state that they were implicated in the commission of said crime and did take part and were guilty of taking the life of Robert C. Swearingen, and that in and by their state-

ment they did implicate this defendant and did state in said admission, declarations and confessions that this defendant was with them at the time and took part in the commission of the offense." Such facts stated in the affidavit and motion for separate trial as are quoted do not justify the conclusion that the court abused the discretion vested in it in denying a motion for separate trial. Defendants' instruction No. 15 informed the jury that statements of Sherman that were admitted against him, only, were not applicable to other defendants. Pruett testified, and his statement previously made was not put in evidence. It was not error to deny the motion for separate trial.

Plaintiff in error contends that it was error to refuse defendants' instruction No. 4. This instruction told the jury that if they believed from the evidence that Pruett was induced to become a witness and testified by any promise of immunity from punishment or by any hope of leniency held out to him the jury should take such fact into consideration in determining the weight which ought to be given to his testimony. The instruction was properly refused. There was no evidence whatever in the record of any promise of immunity or hope of reward offered or held out and therefore nothing upon which to base the instruction.

It is urged by plaintiff in error that the court erred· in permitting Pruett to testify after having pleaded guilty and before sentence was pronounced upon him. This contention is wholly without merit. Pruett pleaded guilty shortly after the selection of the jury, and it was entirely proper for the court to hear the testimony offered in the case before sentencing Pruett, in order that he might know what sentence to impose.

It is also contended that the State's attorney committed prejudicial error in calling attention to the fact that the plaintiff in error did not testify. The record in this case shows that what was said by the State's attorney occurred in a discussion between counsel before the court. It ap-

pears from the record that an argument was had pertaining to the admissibility of certain evidence, when counsel for the State said, "I don't see how any witness except the defendant Wood could testify to that." At the time the remark was made the plaintiff in error had not finished putting in his case and it was not apparent that he would not testify. The remark was addressed to the court in the argument between counsel, and does not come within the rule laid down in *Angelo* v. *People*, 96 Ill. 209, and other cases cited by the plaintiff in error, declaring it to be error to refer to the fact that a defendant charged with crime did not testify.

We have examined the record in this case and are convinced that there is no reversible error in it. The judgment will therefore be affirmed.

*Judgment affirmed.*