THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIE WATT *et al.*, Plaintiffs in Error.

*Opinion filed September 21, 1942—Rehearing denied Nov. 12, 1942.*

ELLIS & WESTBROOKS, (RICHARD E. WESTBROOKS, of counsel,) for plaintiffs in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN

T. GALLAGHER, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE GUNN delivered the opinion of the court:

Plaintiffs in error Willie Watt, Melvin King, William Butler and James Goodwin were indicted for the crime of murder, and upon trial by a judge of the criminal court of Cook county, without a jury, convicted and sentenced to confinement in the penitentiary. They prosecute a writ of error to this court.

The facts are substantially as follows: December 13, 1940, Isaac MacEachin, a clerk in a store located at No. 4120 Calumet avenue, Chicago, Illinois, was shot and killed while three of the defendants were in the room, and another waiting outside in the street. The proof tends to show the four defendants, being youths from sixteen to nineteen years of age, met in a poolroom a short time before the homicide, and planned to rob this store to get some Christmas money. While in the poolroom King exhibited a revolver, and it was handled by all of the defendants in the washroom, the cartridges examined, and then taken possession of by defendant Goodwin. Defendants all went to the store, arriving about 7:15 P.M., and Goodwin, Butler and Watts entered while King remained on the outside. A small purchase of candy was made, when one of the defendants handed a note to one of two other clerks saying it was a holdup and to turn over the money. The names of these two clerks were, respectively, Gary and Jack Much. The note was handed to Jack Much. Both of these witnesses testified that one of the defendants immediately after the delivery of the note turned around and fired a shot at MacEachin. Gary Much shot at the defendants as they left the store, firing through the door and windows and wounded one of them. Willie Watt was confused and did not get out with the first two and was hit by a can of merchandise thrown by Jack Much. After the defend-

ants left the store MacEachin was found lying on the floor, back of the counter, dead, with a bullet wound through his left arm and into his heart.

Defendants testified and all admitted meeting in the poolroom prior to the murder, and discussing the robbery, going to the store, and that three of them went in and one of them stayed on the outside. They disagree as to which one had the gun at the time of the firing of the shot, but the evidence tends to show it was defendant Goodwin. Willie Watt claims he went along with them to purchase some milk. There is no dispute that one shot was fired by one of the defendants. Defendants claim Gary Much fired first; the clerk claims he did not fire until after the defendants started to run, and then fired through the door and windows. All of the defendants were apprehended the same night, except Watt, who fled to Mississippi and was returned later. The revolver was found in the clothes of King, who claims it was handed to him in the alley after the shooting.

Upon hearing the evidence the court sentenced Goodwin to twenty-five years in the penitentiary, and the others to eighteen years each. A motion for new trial and in arrest of judgment was denied by the court. The defendant Watt made a motion to vacate the judgment after the motion for new trial and arrest of judgment had been denied. Each of the defendants was represented by separate counsel at the trial, but counsel who then represented Watt now prosecutes this writ of error on behalf of all of the plaintiffs in error.

It is insisted the trial court erred in refusing to grant Willie Watt a severance. The record shows the defendant Willie Watt was arraigned February 6, 1941, and stood mute, and a plea of "not guilty" was entered for him. At that time the court asked if it was to be a jury trial, and counsel for Watt said he had a motion for severance. Thereupon the court asked if he wanted to proceed with the argument, and the State's Attorney then inquired as

to whether it was going to be a bench trial or a jury trial, and whether there would be a plea of guilty or not guilty. Counsel for Watt announced he was going to submit his case to the court. The matter was then continued to February 26, 1941, without disposition, and then continued to March 31, 1941, the date of the trial. On that date all of the evidence on behalf of the People was introduced and counsel for Watt made a motion to discharge the defendant because of insufficiency in the proof, and upon denial by the court said he had pending a motion for severance. Thereupon the court said he had heard nothing of a motion for severance, and asked him if he was ready to proceed with the defense, upon which counsel for Watt announced he was. It thus appears a period of almost two months elapsed between giving notice of a motion for severance and the time when it was again called to the attention of the court, and then after the People had completed their evidence against all of the defendants.

If the defendant had intended to rely upon his motion for severance he should have called it to the attention of the court before the trial started, and asked the court to rule upon it, and in case of refusal it could be assigned as error. Under the circumstances disclosed the application for severance is waived. (*Lipsey* v. *People,* 227 Ill. 364.) A severance of trial of a joint defendant is not a matter of absolute right, but is within the sound discretion of the trial court. (*People* v. *Wood,* 306 Ill. 224.) Through the inaction of defendant the court had no opportunity to exercise a discretion and there was therefore no ruling of the court upon which error could be assigned.

It is also assigned as error that neither Watt nor his counsel were furnished with a copy of the indictment or a list of the witnesses and jurors, as is required by statute. The recital of the record is unusual. It recites "and the State's Attorney having been furnished with a copy of the indictment in this cause and lists of the names of the witnesses and jurors," etc., and then recites Willie Watt was

arraigned. Upon this recital it is claimed the record affirmatively shows that neither Watt nor his counsel received a copy of the indictment or list of jurors and witnesses. This is not the effect of the recital. It shows the State's Attorney had received them. There is no recital whatever as to defendant Watt as to whether he did or did not receive them. The authorities cited by plaintiff in error do not hold it is mandatory to furnish such copy of indictment and lists without demand, as claimed by him. The case of *Yundt* v. *People,* 65 Ill. 372, holds such a failure is merely irregular, and neither *Collins* v. *People,* 194 Ill. 506, nor *Windstrand* v. *People,* 213 id. 72, decide this question. On the other hand we have held in *People* v. *O'Hara,* 332 Ill. 436, and *People* v. *Pennington,* 267 id. 45, that the statute in this regard is not mandatory but directory, and if the defendants want a copy of the indictment they should demand it, and if the demand be refused they have ground for complaint. This contention of plaintiff in error Watt cannot be sustained.

It is also seriously argued on behalf of all of the plaintiffs in error the *corpus delicti* was not established during the course of the trial. It was stipulated if the coroner's physician were present he would testify he examined the dead body of MacEachin, and that he found two bullet wounds, one through the left forearm and the other in the left chest, and that the bullet passed through the heart and was discovered in the fossa. Plaintiffs in error argue from this there must have been two shots fired in the direction of MacEachin, and since the revolver in the possession of plaintiffs in error was a .45 caliber weapon and that in the possession of Gary Much was a .32 caliber there was a doubt as to which bullet killed the deceased, unless the bullet from his body was produced in court. This theory is based entirely upon the assumption the two wounds found upon the person of the deceased were produced by two separate shots. This does not necessarily follow. We require no expert information to know a bullet fired from a .45

caliber revolver toward a man facing it will easily pierce both the arm and the body. There was only one shot fired towards the deceased, and that was by one of the defendants, as testified to by the two eyewitnesses. The shots fired by Gary Much were towards the door and windows of the store, and the deceased was located at the counter opposite the door and windows. There can be no reasonable doubt that the bullet which killed the deceased was from the revolver in the hands of one of the defendants.

It is also contended certain incompetent evidence was received as against each of the plaintiffs in error. The defendants all made confessions, which were reduced to writing. These agreed in all material respects except as to the person who had possession of the revolver at the time of the shooting. These statements were obtained separately. The court permitted the statements of King, Butler and Goodwin to be received in evidence as an admission of guilt on their own part, but sustained objections that they be received in evidence against defendant Watt. The statement in the nature of a confession made by Watt was excluded by the court. Even reference to the written statement made in the cross-examination of defendant Watt was excluded. However, in his oral testimony defendant Watt gave substantially the same evidence as that of the other defendants, except he claims he went in the store to buy some milk. He knew of the plan to rob this place, and of the note being written, which was delivered to one of the other clerks. He was in the store at the time of the murder, and immediately thereafter fled to another State, claiming, however, he went there for the purpose of getting money from his father with which to purchase an overcoat.

The testimony of the defendants was so nearly the same as that contained in their written statements that no prejudice could have resulted had they been received generally. However, the court was careful to rule each statement could only be considered as against the defendant who made it. It might be added that when on direct examina-

616

tion Watt claimed defendant Butler had the gun while in the store, but later when recalled testified it was in possession of defendant Goodwin, his written statement made in Mississippi naming Goodwin as the one who had it, was called to his attention by his own counsel as corroborative of his testimony.

In a trial without a jury it must be assumed the trial judge gave each witness that degree of credit to which each was entitled. (*People* v. *Sciales,* 353 Ill. 169.) And if some incompetent evidence be received, notwithstanding the care observed by the court, we have held where the evidence clearly justifies a conviction such incompetent evidence is not ground for reversal, if it appear such testimony could not have reasonably affected the result. (*People* v. *Cleminson,* 250 Ill. 135; *People* v. *Riley,* 376 id. 364.) In the present case it is immaterial which of the defendants fired the fatal shot, as they were all engaged in the commission of a robbery, and if during its commission a murder was committed all participants are equally guilty. (*People* v. *Wood, supra; People* v. *Suddeth,* 374 Ill. 132.) The defendants were proven guilty beyond a reasonable doubt not only by the witnesses for the prosecution but by their own testimony.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*