(No. 34612.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MELVIN SUDDUTH, Plaintiff in Error.

*Opinion filed September 18, 1958—Rehearing denied Nov. 14, 1958.*

NATHAN M. GOMBERG, of Chicago, HERBERT M. WET-ZEL, and DEMETRI M. SPIRO, of counsel,) for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, WILLIAM H. SOUTH, FRANCIS X. RILEY, and JOHN J. STAMOS, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

The defendant, Melvin Sudduth, age 23, (plaintiff in error here) was convicted of manslaughter by the criminal court of Cook County and was sentenced to the Illinois

State Penitentiary for a term of not less than one year nor more than fourteen years. Trial was by the court, a jury having been waived. To reverse this conviction he has sued out a writ of error.

The first contention of defendant is that the indictment is wholly insufficient to charge him with the offense of manslaughter.

The indictment in the first count charges in substance that on October 19, 1956, the defendant unlawfully, feloniously and willfully did stab one Louis Singleton, age 19, upon the chest, abdomen and back with a certain knife and thereby did kill and slay the said Louis Singleton, contrary to the statute, *etc.*, and the second count in substance charged that on the day aforesaid the defendant did unlawfully, by stabbing, kill and slay Louis Singleton, contrary to the statute and against the peace and dignity of the People of the State of Illinois.

This indictment clearly spells out the offense charged against the defendant, fully informs him of the nature and cause of the accusation against him and completely satisfies the requirements of our laws and the guaranties of our constitution. In the case of *People* v. *Adams*, 289 Ill. 339, we were called upon to consider similar assignments of error against an indictment charging the offense of manslaughter and, in disposing of them adversely to the contentions of the defendant there, we said: "Manslaughter is defined by our statute to be the unlawful killing of a human being without malice, express or implied, and without any mixture of deliberation whatever. The intent to kill, or malice, is not a necessary ingredient at all in manslaughter. * * * It is common in Illinois for indictments for manslaughter to charge that the defendant unlawfully, feloniously and willfully did the thing or the act that caused the death of the deceased." The indictment in the case at bar is not vulnerable to the attack made upon it by defendant and we conclude that it prop-

erly and adequately charged him with the crime of manslaughter.

The next contention of defendant is that the evidence in this case does not show him to be guilty of the offense charged beyond a reasonable doubt. To determine that question the evidence in the record must be examined. Although 9 witnesses testified on behalf of the State and 8 witnesses (including the defendant) testified on his behalf, the only issue for the trial judge to determine was whether the defendant unlawfully stabbed Louis Singleton to death. It is undisputed that defendant and Singleton were engaged in a fight or tussle on the sidewalk or street in front of 3431 Giles Avenue in Chicago; that in the fight Singleton sustained two knife wounds; and that one of these was a stab wound of the heart which caused his death.

As to whether defendant stabbed Singleton the testimony is conflicting. There was testimony that in the altercation defendant drew a knife and stabbed Singleton. This is denied by defendant. There was the testimony of a police officer that defendant told him he had stabbed Singleton. This is denied by defendant. One witness testified she observed defendant washing his hands and a knife in her home just after the stabbing. This is denied by defendant. There was testimony by other witnesses that they observed the defendant, just after the stabbing, standing at the scene with a knife in his hand, the blade of which appeared to be about 5 to 6 inches in length. This is denied by defendant. One witness testified she asked defendant why he had cut Singleton like that and defendant answered "because he hit my brother Jimmie." This and many other statements of the witnesses were denied by defendant.

There were other witnesses who saw the fight. Some testified they saw no knife at all. Others testified Singleton had a knife in his hand. No knife, including the one claimed by some of the witnesses to have been in the possession of defendant, was found at the scene of the conflict or pro-

duced upon the trial of this cause and defendant denied he ever had a knife. Without going any further into the details of the evidence it is apparent that the trial judge was confronted with the problem of determining which of the witnesses was telling the truth and giving a reasonable account of what they had seen and heard at, during and after the fight.

While it is clear that the testimony of the witnesses, as to whether defendant stabbed Singleton, was conflicting, it does not necessarily follow, as a matter of law, that such a conflict in the evidence is sufficient to raise a reasonable doubt. In *People v. Bolger,* 359 Ill. 58, we said: "The trial judge who heard the case saw and heard the witnesses testify. He had the opportunity to observe their conduct and demeanor while testifying and was in a better position to weigh their testimony than is a reviewing court. The law has committed to the jury, or to the trial court where a cause is tried by the court, the determination of the credibility of the witnesses and of the weight to be accorded to their testimony, and where the evidence is merely conflicting this court will not substitute its judgment for that of the jury or the trial court." And in *People v. Watt,* 380 Ill. 610, we said: "In a trial without a jury it must be assumed the trial judge gave each witness that degree of credit to which each was entitled."

The guilt of the defendant was established beyond a reasonable doubt to the satisfaction of the trial court who heard and saw all the witnesses testify in the cause and found that the People had sustained its burden according to the law and the evidence. The testimony amply justifies this finding, and we can find no fault with it.

Finally defendant contends the court erred in denying his application for probation. An examination of the record shows there is no merit to this contention. The defendant argues that when an application for probation is pending it is a mandatory duty of the trial court to cause a proba-

tion officer to investigate. He must determine whether defendant has a record of previous convictions, his personal characterististics, habits and associations, the names, ages of his family and the conditions of those depending upon him for support and education. Ill. Rev. Stat. 1955, chap. 38, par. 786.

In the case at bar, at the conclusion of the trial, and after the motion for probation, the trial court stated: "I am just trying to determine whether this is the type of case for probation. I assume that he [the defendant] has no previous record. * * * I am trying to determine at this time whether or not we should even consider the application for probation, because I view it this way; that here is a young man who came to his death at the hands of this defendant wrongfully, in the court's opinion, unjustifiably. * * * Frankly, I don't think in this type of case the court could consider probation * * * I don't know what there is to look into. I mean assuming the man has no previous record. * * * Let the finding stand but continue the application for probation until that date. * * * Enter judgment on the finding."

On January 7, 1957, the matter again came on for a hearing upon the motion of defendant for his release on probation. The record shows that the trial court then heard the testimony of witnesses and the arguments of counsel and thereupon overruled said motion and duly sentenced the defendant, as aforesaid. At the request of his counsel the matter was again continued to January 21, 1957, to permit defendant to take a lie-detector test.

At the next hearing counsel for defendant merely renewed his motion for a new trial and arrest of judgment, and moved the court to suspend sentence. These motions were denied by the court, and in answer to a question as to the lie-detector examination, counsel stated: "the people could not get the money" and that "counsel did not think it

was advisable." No further move was made or taken by defendant with respect to his release on probation.

It is upon this state of the record that defendant contends the court erred in denying his application for release on probation. In support of this contention defendant cites *People* v. *Cahill*, 300 Ill. 279, and *People* v. *Penn*, 302 Ill. 488. Neither of these cases is in point. They are not comparable on the facts with the case at bar, nor do they in any degree support defendant's contention. Much more in point is the case of *People* v. *Brown*, 392 Ill. 519, where, on facts quite similar to those in the case at bar, we held the court did not err in denying the application for probation, saying: "When facts which could have been shown by hearing are considered as proved by the court, there could be no abuse of discretion in denying probation in this case." Under circumstances similar to those in the instant case we held the trial court did not err in failing to direct an investigation by a probation officer. (*People* v. *Hamby*, 6 Ill.2d 559.) We reach the same conclusion in the case at bar.

A review of the record fails to show any reversible error in this cause, and for this reason the judgment of the criminal court of Cook County must be and therefore is affirmed.

*Judgment affirmed.*