People of the State of Illinois, Plaintiff, v. Louis French, Defendant.
People of the State of Illinois, Plaintiff-Appellee, v. William V. Hopf, Defendant-Appellant.

Gen. No. 65–28.

Second District.

August 4, 1965.

Edgar J. Elliot, of Wheaton, for defendant-appellant.

Corrigan and Mackay, of Wheaton (Hohn R. Mackay, Special State's Attorney, of counsel), for plaintiff-appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

This is an appeal from an order of the Circuit Court of DuPage County, finding William V. Hopf, the State's Attorney for the county, in contempt of court for his wilful refusal to comply with an order of the court to produce, for the defendant, the grand jury transcript of the testimony of police sergeant, Harold Walthers, one of the witnesses. The State's Attorney was fined $50.

The contempt order arose in the case of The People v. Louis French. The grand jury returned an indictment for armed robbery against French. Prior to trial, the defendant moved for the production of the testimony of Walthers. He asserted in his motion that Walthers' testimony before the grand jury was vital to his case and necessary for the proper preparation of its defense.

The trial court granted defendant's motion and ordered that Walthers' testimony be presented to the defendant. The State's Attorney advised the court that a transcript of the testimony had been prepared; asserted that if the State, at the trial of the cause, called Walthers as a witness he would then deliver the transcript to the court for examination; suggested that, if the court found anything of an impeaching nature therein, it could then be delivered to the defendant's attorney—for impeachment purposes; stated that he felt the order was premature, and refused to comply with it. The trial court then found the State's Attorney guilty of contempt. Thus, the issue before this court is whether a defendant may obtain a transcript of the testimony of a witness before the grand jury for preparation for the trial.

At the outset, it must be appreciated that the veil of secrecy surrounding grand jury proceedings is fundamental to our criminal procedure. Pittsburgh Plate Glass Co. v. United States, 360 US 395, 399, 400, 3 L Ed 1323, 1326 (1959); United States v. Johnson, 319 US 503, 513, 87 L Ed 1546, 1555 (1943); Goodman v. United States, 108 F2d 516, 519 (9th Cir 1939); United States v. Smyth, 104 F Supp 283, 301–2, 304 (ND Cal 1952); Gitchell v. People, 146 Ill 175, 183, 33 NE 757 (1893); (Ill Rev Stats 1963, c 38, par 112–6.) Secrecy serves to insure the most efficient performance of the grand jury in its functions as both an accusatory and inquistorial body in that it helps:

(1) to prevent the escape of those indicted;
(2) to insure the grand jury freedom in its deliberations;
(3) to forestall subornation of perjury with witnesses who may testify before the grand jury and later at trial of those indicted by it;

(4)  to encourage free and untrammeled disclosures by persons who have some information with respect to the commission of crimes; and

(5)  to protect the innocent person, who is accused but exonerated, against unwarranted exposure.

In re Bullock, 103 F Supp 639, 642 (D D C, 1952); 8 Wigmore on Evidence, 3rd Ed secs 2360, 2361, pp 728–736 incl.

■ Some of the reasons for secrecy are removed after indictment. Others, obviously, are not. Further, the purpose of secrecy is designed to assure freedom of deliberation of future grand juries, and the participation of future witnesses, as well as to provide these assurances to those who appeared before the instant proceeding. United States v. American Medical Ass'n, et al., 26 F Supp 429, 430 (D D C, 1939). As was stated by Judge Leahy in United States v. General Motors Corp., 15 FRD 486 (D Del, 1954) at page 488:

"Revelation of the jury minutes may, or may not, have an adverse effect on the particular jurors and witnesses participating in the proceedings whose record is sought, but this alone is not the prime concern. The effect on subsequent proceedings, on jurors, on witnesses, on privacy of the system itself, is of greater moment."

That the secrecy surrounding the grand jury, is in part, designed to obtain testimony otherwise perhaps unavailable, was recently reaffirmed by the Supreme Court in Pittsburgh Plate Glass Co. v. United States, 360 US 395, 400, 3 L Ed2d 1323, 1327 (1959), where the court stated: "Moreover, not only would the participation of the jurors be curtailed, but testimony would be parsimonious if each witness knew that his testi-

what about "absolutely"?

mony would soon be in the hands of the accused." It is of no great import that a particular witness may be willing to testify at the trial as well as before the grand jury, or that he has no fear of disclosure of his testimony before the grand jury. It is of consequence that, where necessary, one who has such fear may be assured his testimony is not subject to public disclosure.

Most certainly the veil of secrecy is not impenetrable. It is not an end in itself, but a means to further justice by permitting the grand jury to function most effectively. Where the ends of justice require it, the testimony of a grand jury witness may be disclosed. United States v. Socony-Vacuum Oil Co., 310 US 150, 234, 84 L Ed 1129, 1174 (1940); People v. Johnson, 31 Ill2d 602, 606, 203 NE2d 399 (1964).

The Johnson case is enlightening in resolving the question of when the transcript of a grand jury witness' testimony may be delivered to the defendant. There, the prosecutrix, who had testified before the grand jury, also testified at the first trial. On appeal, the Supreme Court reversed the conviction of the defendant. On the second trial the defendant requested a copy of the testimony given by the prosecutrix before the grand jury. The trial court denied the request, and the Supreme Court on appeal of the second conviction reversed the trial court, and held that the defendant was entitled to the grand jury testimony of the prosecutrix.

The court noted that in this case, none of the reasons underlying the rule for secrecy longer existed: that after a person is indicted and the case proceeds to trial, there is no danger of escape; that the risk of damage to the reputation of one investigated, but not indicted, is not applicable; that it is not likely that there will be subornation of perjury if the witness has already testified against the defendant; that dis-

443

closure is not a hindrance to future grand jury deliberations, as such deliberations are not revealed; and that there is no deterrent to the participation of future witnesses before future grand juries where the disclosure of knowledge is made by the witness himself on the stand. (31 Ill2d at 606.) The court observed that the rationale of the cases, People v. Wolff, 19 Ill2d 318, 167 NE2d 197 (1960) and People v. Moses, 11 Ill2d 84, 142 NE2d 1 (1957) was fully applicable to the grand jury testimony sought, if the basic reasons underlying the rule for secrecy were no longer present.

In Moses, the court held that it was error to refuse to turn over to defendant's counsel certain police inter-departmental records containing reports relating to statements made by certain witnesses at the trial. At page 89, the court noted that no ground of privilege was apparent; that an accused person is entitled to the production of a document that contradicts the testimony of a prosecution witness; and that the State should have no interest in opposing the disclosure of facts, unless interested in convicting persons on the testimony of untrustworthy witnesses.

In Wolff, the court observed that it was error to deny defendant access to written statements made by prosecution witnesses prior to trial. On page 323, referring to the Moses case, the court said, "All authorities examined agree that use of documents produced under the rule is restricted to impeachment. . . ."

The Supreme Court in Johnson, in adopting the rationale of Moses and Wolff, accepted as applicable to grand jury testimony the right of a defendant to access to statements of a witness, who had testified at a trial, for purposes of impeachment. In doing so, the Supreme Court reaffirmed what it previously had held or implied was proper in People v. Goldberg, 302

444

Ill 559, 564, 135 NE 84 (1922); Bressler v. People, 117 Ill 422, 436, 437, 3 NE 521 (1886); and Hoge v. People, 117 Ill 35, 49, 6 NE 796 (1886).

██ The distinction between the case at bar and the Johnson, Wolff and Moses cases is crucial. Here the witness whose testimony is sought, has not yet testified. He has not yet stated before the defendant and the world all that he supposedly knows about the commission of the crime in question. Until he does so testify, no matter how vital his knowledge may appear, there can be no certainty that he will testify. If such witness testifies truthfully at the trial, he should have no reason to fear the disclosure of his prior grand jury testimony. "If he tells the truth and the truth is the same as he testified before the grand jury, the disclosure of the former testimony cannot possibly bring to him any harm . . . which his testimony on the open trial does not equally tend to produce. If on the other hand his testimony now is inconsistent with that before the grand jury, the privilege ought not to apply." 8 Wigmore on Evidence, 3rd Ed sec 2362, pp 736, 737.

The justification of the Johnson case for revealing the testimony does not exist prior to trial. Until a witness speaks on the stand at the trial, his prior utterances before the grand jury should remain undisclosed unless he chooses, himself, to disclose what he has said, or unless there are compelling circumstances, not present in the case at bar, which may dictate, in the furtherance of justice, that a disclosure be made. It is not unrealistic to suppose there are those who will speak the truth before a grand jury only upon being assured they will not be called upon to later testify publicly. It is important if the grand jury is to serve its function, that these witnesses be heard. It is obvious that the guarantee, that one will not later be called upon to testify publicly, serves no

445

purpose if the defendant can obtain this same grand jury testimony prior to trial, by merely requesting it for the purpose of preparation for trial.

■ It is apparent from the Wolff-Moses rule that statements of witnesses before the grand jury, in possession of the State, may not be obtained prior to trial as an avenue for discovery but may be possessed for the purpose of impeachment. Cases from other jurisdictions have recognized that there are additional compelling circumstances which may dictate, in the furtherance of justice, that a disclosure be made.

Examples of such circumstances are: a prosecution for perjury, Izer v. State, 77 Md 110, 26 A 282 (1893); People v. Hulbut, 4 Denio (NY) 133, 47 Am Dec 244 (this principle is frequently declared by legislative enactments, see: 8 Wigmore on Evidence, 3rd Ed Sec 2363, p 739); where a person pleads immunity from prosecution by virtue of an immunity statute, Murphy v. State, 124 Wis 635, 102 NW 1087 (1905); misconduct of a public officer, In re Bullock, 103 F Supp 639 (DDC, 1952); People ex rel. Hirschberg v. Board of Supervisors, 251 NY 156, 167 NE 204 (1929); Attorney General v. Pelletier, 240 Mass 264, 134 NE 407 (1922); and where plaintiff seeks redress for libel and slander against the charge that he, as a grand juror, protected a swindler, State v. Fish, 90 NJL 17, 100 A 181 (1917). Such circumstances are not present in the case at bar.

The trial court erred in holding the respondent, William Hopf, guilty of contempt in that it was error to order the People to produce the grand jury testimony of the witness, Walthers, for the defendant to use in the preparation of his defense.

The State's Attorney indicated to the court that if the witness in question were called upon to testify at the trial, he would then produce the transcript of that witness' testimony before the grand jury to the court, and if the court found anything of an impeaching nature in the transcript it could then be delivered

446

to the defendant's attorney. While we are not called upon to determine the propriety of this suggested procedure, we think it appropriate to observe that when the reasons for secrecy no longer prevail and the transcript of grand jury testimony is to be made available for purposes of impeachment, it then stands on the same footing as any other statement in the possession of the State to be made available for impeachment purposes.

The appropriate procedure is then that sanctioned by the Supreme Court in the Wolff case, on page 327, where it stated that "where no privilege exists, and where the relevance and competence of a statement or report has been established, the trial judge shall order the document delivered directly to the accused for his inspection and use for impeachment purposes. However, if the prosecution claims that any document ordered to be produced contains matter which does not relate to the testimony of the witness sought to be impeached, the trial judge will inspect the document and may, at his discretion, delete unrelated matters before delivery is made to the accused."

The order of the trial court finding the respondent, William V. Hopf, in contempt of court and assessing a fine therefore in the sum of $50.00 is, accordingly, reversed.

Judgment reversed.

ABRAHAMSON, P. J. and ATTEN, J., concur.