THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BENEDETTO J. MASSARELLA *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 61346

Opinion filed September 13, 1977.

Julius Lucius Echeles, Frederick F. Cohn, and Carolyn Jaffe, all of Chicago, for appellants.

William J. Scott, Attorney General, of Chicago (John F. Podiliska, Assistant Attorney General, of counsel), for the People.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Following a presentation by assistant Attorneys General of the State of

Illinois, the Cook County grand jury returned a 49-count indictment on June 8, 1973. That indictment was brought against numerous parties including Benedetto J. Massarella, Raymond J. Battersby, Raymond Weglowski, Eugene Kriwiel, Bee Jay's Truck Stop, Inc. (BJTS), Mideast Transport, Inc. (Mideast), Mid-Town Petroleum, Inc. (Mid-Town), and Midwest Fuel Transportation, Inc. (Midwest). In essence, the indictment charged the named individuals and corporations with conspiracy, perjury, theft, and tax evasion.

After a jury trial Massarella was found guilty of conspiracy, theft, and one count of perjury; he was found not guilty of a second count of perjury. BJTS was found guilty of conspiracy and theft. Mideast was found guilty of conspiracy. Thereafter, Massarella was sentenced for theft to 5 years probation, 2 years periodic imprisonment, and a $10,000 fine, and ordered to pay restitution in the amount of $425,407 to the State of Illinois. In addition he was sentenced to 1 to 3 years in the penitentiary and fined $10,000 for perjury. BJTS and Mideast were each sentenced to pay a $10,000 fine and ordered to pay $425,407 in restitution to the State of Illinois.

Defendants, Massarella, BJTS, and Mideast, now appeal from the judgments and the sentences, raising 15 issues for our review. These issues include whether the indictment should have been dismissed due to the Attorney General's allegedly improper presentation to the grand jury and subsequent prosecution of the cause; whether the trial court should have recused himself; whether the trial court erred in denying defendants' motion for a substitution of judges; and numerous alleged errors re court rulings pertaining to the failure to dismiss counts in the indictment, continuances, rulings pertaining to the trial of the case, sufficiency of the evidence, polling of the jury, the hearing in aggravation and mitigation, and the sentences imposed.

Many of the counts in the indictment were dismissed prior to trial. Five of the original 49 counts, however, remained in the indictment. The indictees and unindicted co-conspirators were charged with conspiring to commit theft of Illinois motor fuel tax monies. Defendant Massarella was charged with committing perjury in a legal proceeding[1] and in certain deposition testimony given in a separate proceeding.[2] In connection with the legal proceeding for which Massarella was charged with perjury,

---

[1] That proceeding was a civil case entitled Bee Jay's Truck Stop, Inc. v. Illinois Department of Revenue, Case No. 71 Ch 3608 brought by BJTS in the circuit court of Cook County.

[2] The deposition testimony was offered in connection with the civil case entitled Wells Petroleum Company v. James Peterson v. P. L. Wright Service Company, Inc., Rolla Enterprises, and Benjamin Massarella, Case No. 71 M1 139418 in the circuit court of Cook County.

Battersby was also similarly charged. Finally, BJTS and Massarella, individually and as president of BJTS, were charged with theft of Illinois motor fuel tax monies. Defendants Battersby, Mid-Town, Kriwiel, Weglowski, and Midwest pleaded guilty to conspiracy to commit theft. Battersby also pleaded guilty to perjury.

Due to our disposition of the appeal, we need not set forth all of the testimony or pass upon all of the errors raised. The State's evidence purported to show that defendant Massarella entered into an agreement with Raymond Battersby in the summer of 1967 to divert untaxed heating oil to defendant BJTS for subsequent sale as taxed diesel fuel. At the time, Massarella was both president and sole shareholder of BJTS, a corporation which operated a Chicago truck stop; Battersby was both president and principal shareholder of Mid-Town, a corporation which sold oils, diesel fuel, and gasoline. The untaxed diesel fuel was obtained from oil terminals serving as suppliers to Battersby and Mid-Town and was transported by an employee of Massarella and BJTS in a vehicle owned by Mideast, a corporation controlled by Massarella. In support of their guilty pleas, Battersby and Kriwiel stipulated that Massarella paid them in cash to cover the transactions by maintaining false business records.

The evidence also purported to show that in furtherance of the agreement with Battersby, Massarella entered into additional agreements with other individuals. As a result of such agreements, BJTS received more untaxed diesel fuel from other sources. The fuel was purchased through Rella Enterprises, a sole proprietorship owned by Massarella. Between August 1967 and May 1971, Massarella and BJTS obtained 6,238,057 gallons of untaxed diesel fuel. When BJTS sold the diesel fuel, however, it collected Illinois motor fuel tax from its customers. Thus, the total amount of tax collected and retained by Massarella was $425,407.

Massarella initiated a lawsuit in August 1971, wherein he sought to enjoin the Illinois Department of Revenue from investigating him individually and his business. In the course of that suit, Massarella denied that he had purchased fuel from Mid-Town prior to January 1971, and denied that he had ever purchased fuel through Rella Enterprises. Battersby later admitted that he lied in that proceeding when he denied selling untaxed fuel to BJTS; Kriwiel admitted that he lied to investigators from the Revenue Department when questioned about the entire scheme. At trial, Massarella affirmed his previous testimony given in that lawsuit. He contended that a former employee owned the vehicle used to haul the fuel and that the employee did so pursuant to an agreement between the employee and Battersby. Massarella denied the existence of any conspiracy involving either himself or BJTS.

Following a jury trial, Massarella was found guilty of conspiracy, theft,

and perjury; BJTS was found guilty of conspiracy and theft; Mideast was found guilty of conspiracy. This appeal follows.

I.

Defendants contend that the indictment against them should have been dismissed because the Attorney General, improperly and in excess of his authority, instituted the proceedings, presented the cause to the grand jury, and entirely conducted the prosecution of the case. We agree.

A.

A historical examination of Illinois laws governing grand jury activities illustrates the impropriety of the Attorney General's appearance before the grand jury. The following language from *People v. Sears* (1971), 49 Ill. 2d 14, 26-27, 273 N.E.2d 380, is particularly instructive:

"The statutory provision with respect to witnesses before the grand jury, enacted in 1827 (Rev. Laws 1827, p. 162, §175) provided 'In all complaints exhibited before the grand jury of any county, they shall hear the witnesses, on behalf of the people only.' This provision was reenacted in 1833 (Rev. Laws 1833, p. 213, §177), in 1845 (Rev. Stat. 1845, p. 186, §187), in 1874 (Rev. Stat. 1874, p. 407), and remained in force and effect until the enactment of section 112—4(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1969, ch. 38, par. 112—4(a)) which provides 'The Grand Jury shall hear all evidence presented by the State's Attorney.'

Section 5 of 'An Act in Regard to Attorneys General and State's Attorneys' (Ill. Rev. Stat. 1969, ch. 14, par. 5) (approved March 22, 1872, L. 1871-2, p. 190), as amended in 1967, provides that one of the duties of the State's Attorney shall be 'To commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the state or county may be concerned.' This provision has been in force and effect virtually without change or modification since February 19, 1827. Revised Laws of Illinois 1833, Revised Statutes of Illinois 1845, Illinois Laws 1873-4."

We note that prior to the enactment of the Code of Criminal Procedure of 1963, the representative of the people who dealt with the grand jury was ordinarily called "the prosecutor" or "the prosecuting attorney." (30 Pope's Digest, vol. II, §4, at 607 (1815) (Illinois Historical Collection, vol. XXX); Rev. Laws 1827, §167, at 161; Rev. Laws 1833, §169, at 211-12; Rev. Stat. 1845, §179, §189, at 184, 186; Rev. Stat. 1874, ch. 38, div. XI, §2, §7.) Thus, at one time there may have been confusion as to whether the Attorney General or the State's Attorney was the proper representative of

the people in criminal cases. The advent of the new Code, however, clarified any ambiguity as to which "prosecutor" the legislature thought should deal with and appear before the grand jury.

■■ Section 112—6(a) of the current Code plainly provides that:

*"Only the State's Attorney, his reporter and any other person authorized by the court may attend the sessions of the Grand Jury.* Only the grand jurors shall be present during the deliberations and vote of the Grand Jury. If no reporter is assigned by the State's Attorney to attend the sessions of the Grand Jury, the court, on petition of the foreman and 11 other grand jurors, may for good cause appoint such reporter." (Emphasis added.)[3] (Ill. Rev. Stat. 1973, ch. 38, par. 112—6(a).)

The provision is absolutely clear. It requires neither interpretation, nor construction. In unmistakable terms, the statute sets forth those persons who may lawfully attend grand jury sessions; the Attorney General is not among them.[4] Recent efforts to enact new legislation expanding the powers of that office belie the claim that the Attorney General is within the ambit of the statute. By Senate Dill 1277, introduced in the 1977 session of the Illinois legislature, the Attorney General sought to create a statewide grand jury system, which would be impanelled whenever he applied to the Illinois Supreme Court. On May 6, 1977, the Judiciary Committee of the Illinois Senate recommended that the measure not be passed and the legislation was tabled. (I Legislative Synopsis & Digest 795, Legislative Reference Bureau (July 15, 1977).) The mere fact that the legislation was proposed weakens, if not destroys, the contention put forth by an assistant Attorney General at oral argument of this cause. He argued that by virtue of the common law, the Illinois Attorney General has always been authorized to appear alone before any grand jury of the State.

■■ Although grand jurors must inquire into offenses which come to its knowledge from the court, the State's Attorney, its own members or any source (*People v. Polk* (1961), 21 Ill. 2d 594, 598, 174 N.E.2d 393), the proper channel for presenting information to the grand jury is the State's

---

[3] Section 112—6(a) was amended by Public Act 79—669 and Public Act 79—670, effective October 1, 1975, to provide:

"Only the State's Attorney, his reporter and any other person authorized by the court or by law may attend the sessions of the Grand Jury. Only the grand jurors shall be present during the deliberations and vote of the Grand Jury. If no reporter is assigned by the State's Attorney to attend the sessions of the Grand Jury, the court shall appoint such reporter."

[4] Unauthorized persons are barred from grand jury sessions in order to maintain the veil of secrecy surrounding the proceedings. (Ill. Ann. Stat., ch. 38, par. 112—6 (Smith-Hurd 1973).) For a discussion of the purposes served by the maintenance of such secrecy, compare *People v. French* (2d Dist. 1965), 61 Ill. App. 2d 439, 441-42, 209 N.E.2d 505, with the article by B. Duff & A. Harrison, *The Grand Jury in Illinois: To Slaughter a Sacred Cow*, 1973 U. Ill. L. F. 635, 650 *et seq.*

Attorney (*People v. Sears* (1971), 49 Ill. 2d 14, 29, 273 N.E.2d 380). The question in the instant case is whether the Attorney General, acting alone, is also a proper channel. The statutory response in section 112—6(a) is clearly, "No"; and the law refuses to permit one to be in the presence of the grand jury during the investigation who is not legally and properly before it (*People v. Munson* (1925), 319 Ill. 596, 603, 150 N.E. 280). Yet the Attorney General maintains that his appearance was both legal and proper because of the unique common law powers with which his office is vested. To resolve the question we need to review the powers of the Attorney General in light of the common law, the Illinois Constitution, the pertinent Illinois statutes, and the relevant case law. In addition we must compare the powers and duties of the Attorney General with those of the State's Attorney to determine to what extent, if any, the authority of these officials is in conflict.

### B.

■■ The Attorney General is the legal officer of the State, whose duties and powers are prescribed by law. (Ill. Const. 1970, art. V, §15.) Although our constitution has never specifically enumerated his powers and duties, the members of the Constitutional Convention in 1970 clearly intended that the Attorney General should continue to possess his common law powers. (See Ill. Ann. Const. 1970, art. V, §15, Constitutional Commentary (Smith-Hurd 1971); J. Freels, "Powers of the Attorney General of Illinois," 53 Chi. Bar Rec. 119 (1971).) The Illinois Supreme Court has frequently stated that it would be difficult to enumerate all the powers vested in the Attorney General at common law; and the cases, therefore, emphasize that at common law the Attorney General was both the law officer of the crown and its chief representative in the courts. (*Fergus v. Russel* (1915), 270 Ill. 304, 336, 110 N.E. 130; accord, *People ex rel. Elliott v. Covelli* (1953), 415 Ill. 79, 84, 112 N.E.2d 156; *People ex rel. Board of Trustees v. Barrett* (1943), 382 Ill. 321, 346, 46 N.E.2d 951; *People ex rel. Barrett v. Finnegan* (1941), 378 Ill. 387, 392, 38 N.E.2d 715; *Saxby v. Sonnemann* (1925), 318 Ill. 600, 606, 149 N.E. 526.) Thus, historically the Illinois Attorney General has been vested with broad powers which have largely remained undefined. *Cf. Jafree v. Scott* (N.D. Ill. 1974), 372 F. Supp. 264, 272, *modified without opinion,* 519 F.2d 1405 (7th Cir. 1975).

In the case at bar, the Attorney General maintains that his actions herein are within the purview of his common law powers as explained in *Fergus v. Russell. Fergus* held that because the Attorney General was an officer known to the common law, the constitution in creating the office engrafted upon the office all the common law powers and duties of an attorney general, and permitted the legislature to confer upon him only

new and additional powers. Thus, the case held that the State legislature could not strip the Attorney General of his common law powers. (270 Ill. 304, 337-40.) Yet even the *Fergus* case did not vest limitless power in the Attorney General. The court there stated:

"As the office of Attorney General is the only office at common law which is thus created by our constitution the Attorney General is the chief law officer of the State, and the only officer empowered to represent the people in any suit or proceeding in which the State is the real party in interest, *except where the constitution or a constitutional statute may provide otherwise.*" (Emphasis added.) 270 Ill. 304, 342; accord, *People ex rel. Scott v. Briceland* (1976), 65 Ill. 2d 485, 493-4, 499, 359 N.E.2d 149; *Stein v. Howlett* (1972), 52 Ill. 2d 570, 585, 289 N.E.2d 409; *People v. Illinois Toll Highway Com.* (1954), 3 Ill. 2d 218, 236, 120 N.E.2d 35.

There are two statutes which bear on the question presented. Section 4 of "An Act in regard to attorneys general* * *" (Ill. Rev. Stat. 1973, ch. 14, par. 4) provides in part:

"The duties of the attorney general shall be—
* * *

Second—To institute and prosecute all actions and proceedings in favor of or for the use of the state, which may be necessary in the execution of the duties of any state officer.
* * *

Fourth—To consult with and advise the several state's attorneys in matters relating to the duties of their office; and when, in his judgment, the interest of the people of the state requires it, he shall attend the trial of any party accused of crime, and assist in the prosecution."

Section 5 of "An Act in regard to attorneys general* * *" (Ill. Rev. Stat. 1973, ch. 14, par. 5) provides in part:

"The duty of each State's attorney shall be:

(1) To commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned."

Moreover, the office of State's Attorney is also created by the Illinois Constitution. (Ill. Const. 1970, art. VI, §19.) As this case demonstrates, there is continuing confusion in Illinois as to the division or concurrence of powers and duties allocated between the offices of Attorney General and State's Attorney. See Note, *The Relationship Between the Attorney-General and the State's Attorney in Illinois*, 1949 U. Ill. L. F. 507.

Some cases suggest that the two officers may exercise their powers concurrently; and that either may initiate appropriate proceedings in the

name of the State if the other has not acted. (*Doe v. Scott* (N.D. Ill. 1971), 321 F. Supp. 1385, 1387, *vacated and remanded sub nom. Hanrahan v. Doe* (1973), 410 U.S. 950, 35 L. Ed. 2d 682, 93 S. Ct. 1410; *State of Illinois v. Brunswick Corp.* (N.D. Ill. 1963), 32 F.R.D. 453, 457.) That understanding of the offices, however, has not been consistently set forth in Illinois case law. In *People ex rel. Kunstman v. Nagano* (1945), 389 Ill. 231, 249, 59 N.E.2d 96, our supreme court commented:

> "[W]e have always viewed a State's Attorney as a constitutional officer with rights and duties *analogous to or largely coincident with the Attorney General, though not identical,* and the one to represent the county or People in matters affected with a public interest." (Emphasis added.)

The court has also said that the powers of the two officers are *not* co-extensive. (*People ex rel. Hoyne v. Newcomer* (1918), 284 Ill. 315, 232, 120 N.E. 244.) We believe that the propriety of the Attorney General's actions in the instant case must be measured against and can be determined by the clear statement of his duties contained in section 4 of "An Act in regard to attorneys general * * *" (Ill. Rev. Stat. 1973, ch. 14, par. 4).

The Attorney General is charged with the responsibility of consulting with and advising the State's Attorney as to the latter's duties. In addition, the Attorney General may attend criminal trials and *assist* in the prosecution. The central inquiry, therefore, is whether the Attorney General could properly exceed mere assistance and solely conduct the prosecution of the defendants in this case. The Attorney General contends that his prosecution of the cause was authorized, and he relies on the case of *People v. Looney* (1924), 314 Ill. 150, 145 N.E. 365, wherein the Attorney General also appeared before the grand jury and thereafter represented the People in pretrial motions and at the trial. In *Looney*, the court upheld the Attorney General's authority and noted:

> "The State's attorney made no objection to the appearance of the Attorney General or any act of his in the case. He was satisfied to accept his assistance. If the State's attorney, without objection, permits the Attorney General to appear in court assisting in the prosecution of one accused of crime, it certainly does not lie in the mouth of the defendant to object. The record shows the appearance of both the State's attorney and the Attorney General, and neither was under any obligation to show any authority for his appearance." (314 Ill. 150, 154.)

The Attorney General in the instant case maintains that the State's Attorney never objected to his appearance and was likewise satisfied to accept assistance from him. Yet in the *Looney* case the court commented

on the State's Attorney's *permission* allowing the Attorney General to appear *assisting* in the prosecution.

■■ The record in the case at bar reflects neither permission, nor assistance. The Attorney General, by an assistant, appeared both before the grand jury and at trial, unaccompanied by the State's Attorney or an assistant. In fact the occasional mention of the State's Attorney demonstrates the extent of the Attorney General's participation in the cause. Although the signatures of the Attorney General and the State's Attorney appear on the indictment, the Attorney General concedes that two of his assistants presented the case to the grand jury without any appearance of, or participation by, the State's Attorney or his assistants. The only time the State's Attorney, through his assistants, appeared at all was at the arraignment; and the record reflects that his actions were ministerial. The comments made by each of two assistant State's Attorneys at two separate arraignment dates illustrate the totality of the Attorney General's control. On June 12, 1973, an assistant State's Attorney said, "This is a matter presented by the Attorney General and the State has no information." On June 15, 1973, another assistant State's Attorney said, "This is the Attorney General's case." Even though the Attorney General is authorized to assist the State's Attorney in the prosecution of criminal cases, we cannot, on the record before us, characterize the Attorney General's actions as assistance.

We are not persuaded otherwise by *Looney* or two other cases cited as authority by the Attorney General. In *People v. Robins* (4th Dist. 1975), 33 Ill. App. 3d 634, 338 N.E.2d 222, the Attorney General withdrew from the case when the defendant filed a pleading wherein he objected to the Attorney General's initiation of the prosecution. Unlike his response in *Robins*, the Attorney General here has consistently appeared throughout the case and also prosecuted this appeal on behalf of the People. In *People ex rel. Castle v. Daniels* (1956), 8 Ill. 2d 43, 47, 132 N.E.2d 507, the Attorney General intervened at the request of the State's Attorney. We have searched the record in the instant case and have found no such request by the State's Attorney. Absence of objection by the State's Attorney may or may not be acquiescence, but it certainly does not constitute a request.

■■■ The position taken by the Attorney General fails to recognize the State's Attorney's traditional role in the prosecution of criminal cases. Upon the State's Attorney, more than any other officer, rests the responsibility of enforcing and vindicating the criminal law. (*Shoop v. People* (2d Dist. 1892), 45 Ill. App. 110, 111-12.) He is charged by statute with the commencement and prosecution of criminal cases in his county (*People v. Stinger* (2d Dist. 1974), 22 Ill. App. 3d 371, 373, 317 N.E.2d 340;

*O'Hair v. People* (3d Dist. 1889), 32 Ill. App. 277, 279-80); and he is vested with discretion and responsibility to determine which crimes should be charged and what penalties should be sought (*Marcisz v. Marcisz* (1976), 65 Ill. 2d 206, 210, 357 N.E.2d 477; *People v. Graham* (3d Dist. 1975), 25 Ill. App. 3d 853, 857, 323 N.E.2d 441; *People v. Baron* (2d Dist. 1970), 130 Ill. App. 2d 588, 591, 264 N.E.2d 423). Although a court may request that the Attorney General act in place of the State's Attorney if he is sick, absent, interested or unable to attend (Ill. Rev. Stat. 1973, ch. 14, par. 6; *Wilson v. County of Marshall* (2d Dist. 1930), 257 Ill. App. 220, 225), in the absence of such circumstances, even the court may not substitute one official for the other (*People v. Mortenson* (1st Dist. 1922), 224 Ill. App. 221, 225). Moreover, since the State's Attorney has the duty to take charge and prosecute all criminal offenses in his county, the Attorney General has no power to interfere while that duty is being honestly, intelligently, and carefully discharged. 1916 Ill. Op. Att'y Gen. 767, 768.

In the case at bar, however, the Attorney General contends that his actions were proper in that he was fulfilling his duty pursuant to both the common law and statute. We are not convinced that any particular part of section 4 of "An Act in regard to attorneys general * * *" (Ill. Rev. Stat. 1973, ch. 14, par. 4) or that section in its entirety, empowered him, on his own, to institute criminal proceedings against defendants. The Attorney General's power in this regard is a matter for the legislature. For example, the legislature has specifically empowered the Attorney General to prosecute criminal violations of the Illinois Antitrust Act (Ill. Rev. Stat. 1973, ch. 38, par. 60—6) and the Cigarette Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 453.16). Our research has not revealed any similar statutory enactment which gave the Attorney General the power to solely prosecute the criminal violations alleged in the instant case.

Furthermore, defendants strongly urge that the legislature has rejected the Attorney General's efforts to expand his power to solely commence and prosecute offenses arising from State taxes. If the Attorney General already possesses that power by virtue of the common law and by statute, defendants question why the Attorney General has proposed legislation authorizing it. House Bill 2063 and Senate Bill 976, defeated in the 1975 Illinois legislature, would have added the following provision to the duties of the Attorney General enumerated in section 4 of "An Act in regard to attorneys general * * *" (Ill. Rev. Stat. 1973, ch. 14, par. 4):

> "Thirteenth—To commence and prosecute, when in his judgment the interest of the people of the state requires it any complaints, informations or indictments for offenses arising in connection with the determination or collection of state taxes * * *. With respect to the commencement and trial of such prosecutions, the attorney general shall have all of the powers and

duties vested by law in state's attorneys with respect to criminal prosecutions generally." (H.B. 2063, S.B. 976, 79th Ill. Gen. Assem. (1975).)

Defendants urge that, at the very least, the Attorney General's contention in this case is undermined by his proposal of the legislation. We agree. The legislature has spoken. The defeat of the proposed bills makes it clear that the Attorney General did not possess in the past, nor does he presently possess, the authority to solely institute criminal proceedings against defendants for their activities in connection with State taxes.

Although some cases from other jurisdictions suggest that an attorney general has the same right to appear before the grand jury as the regular prosecutor, even those cases limit the exercise of such power to the dictates of the authorizing statutes. (See cases collected in Annot., "Presence in grand jury room of person other than grand juror as affecting indictment," 4 A.L.R. 2d 392, §11 (1949); Note, *Effect of Presence of Unauthorized Persons in Grand Jury Room During Investigation of Charge Against Accused*, 26 Chi-Kent L. Rev. 167 (1948); 38 C.J.S. *Grand Juries* §40 (1943); 38 Am. Jur. 2d *Grand Jury* §35 (1968).) The instant case is wholly distinguishable from *People ex rel. Hollis v. Chamberlain* (1971), 49 Ill. 2d 403, 407-08, 273 N.E.2d 835, for example, where the Attorney General's appearance before the grand jury was authorized by the Antitrust Act of Illinois.

Instead, the case at bar resembles *People v. Flynn* (1940), 375 Ill. 366, 31 N.E.2d 591, wherein the Attorney General excluded the State's Attorney from the grand jury room and took exclusive charge of the prosecution. The court held that neither the statute listing the Attorney General's duties, nor the previously cited *Looney* case, authorized such actions. While we do not suggest that the State's Attorney was excluded here, we think the Attorney General could have safeguarded the record. He should have made certain that the record reflected the State's Attorney's request for his assistance and the court's permission. After all, the court has inherent power to supervise the grand jury so as to prevent the perversion of its process. (*People v. Sears* (1971), 49 Ill. 2d 14, 35, 273 N.E.2d 380.) In the absence of that request and that permission, our examination of the record does not permit us to simply assume that the State's Attorney acquiesced in the Attorney General's takeover of the entire proceedings. Even the *Looney* case states that the Attorney General there was *assisting* the State's Attorney. (314 Ill. 150, 154, 159.) The case at bar cannot be so construed.

## C.

We think it apparent that the participation of the Attorney General, through his assistants, in the investigation of the grand jury, his presence

and examination of witnesses, his preparation of the indictment and his advice incident to the law prejudiced the interests of defendants. (*People v. Munson* (1925), 319 Ill. 596, 604, 150 N.E. 280.) Like the State's Attorney in *Munson* who was not licensed to practice law, the Attorney General appeared not merely as a clerk or stenographer, but as a prosecuting attorney representing the People in the commencement of a proceeding by indictment for the purpose of prosecuting breaches of law. (319 Ill. 596, 604.) In this case, as in *Munson*, the indictment was properly procured by an unauthorized person.

■■ The Attorney General was not authorized by statute to appear before the grand jury (Ill. Rev. Stat. 1973, ch. 38, par. 112—6(a)); and he was not authorized by the common law to thereafter take exclusive charge of prosecuting the cause. His common law powers have been sufficiently clarified by a constitutional statute (Ill. Rev. Stat. 1973, ch. 14, par. 4). Absent any request by the State's Attorney or the court for his assistance before the grand jury, the Attorney General was not permitted to appear before that body. Moreover, the lack of meaningful participation by the State's Attorney in prosecuting the case convinces us that the Attorney General simply usurped the State's Attorney's powers and ignored the constitutional officer who has been traditionally empowered to prosecute criminal violations. One of the most sacred and cherished institutions in our criminal justice system is the grand jury. Our legislature has clearly mandated that only those specified in the statute may be present before the grand jury. We appreciate the position of the Attorney General. But we do not believe the sanctity of the grand jury should be judicially diluted by allowing any exception to the clear legislative expression of section 112—6(a).

For these and all of the reasons explained above, the indictment against defendants should have been dismissed. Thus it is unnecessary to discuss the numerous other issues raised in this appeal. In accordance with this view, defendants' convictions are reversed.

Reversed.

STAMOS and PERLIN, JJ., concur.